UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>FARD JIHAD OLIVER,<br><br>                             Defendant. | Case No.: 18-cr-03390-GPC-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 27]** |

Defendant Fard Jihad Oliver has filed a motion seeking a reduction of his sentence to time served with Probation-monitored home confinement under 18 U.S.C. § 3582(c). ECF No. 27 ("Motion"). The Government opposes. ECF No. 35 ("Opp."). For the reasons that follow, Oliver's motion is DENIED.

## **Background**

Oliver was convicted by guilty plea of two counts of Importation of a Controlled Substance (Methamphetamine and Heroin) in violation of 21 U.S.C. §§ 952 and 960. ECF Nos. 14, 25. Oliver was sentenced to a term of imprisonment of 120 months as to the importation of methamphetamine and 63 months as to the importation of heroin, to run concurrently, followed by 5 years of supervised release for each count to run

concurrently. *Id.* Oliver is currently serving his sentence at the Federal Correctional Institution, Victorville Medium II ("FCI Victorville"). Opp. at 2[1]. Oliver has served about 36 months of his sentence and is scheduled to be released on January 8, 2027. *Id.*; ECF No. 18 (Presentence Investigation Report or "PSR") at 1.

Oliver is 45 years old and did not claim to have underlying health conditions prior to sentencing. *Id.* at 2. Oliver contracted COVID-19 while in custody at FCI Victorville. ECF No. 38-1 (Ex. 2) at 2. After contracting COVID-19, Oliver did not report experiencing symptoms from the virus, but states that he "suffered physically and mentally." Ex. 2 at 5–6; Motion at 5.

## **Discussion**

Oliver now moves for release under 18 U.S.C. § 3583(c)(1)(A), which provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of a the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

---

[1] Refers to CM/ECF pagination.

2

18-cr-03390-GPC-1

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Oliver has satisfied the administrative exhaustion requirement, and second, whether Oliver has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id.* As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). See, e.g., First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020)) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### I. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. Oliver dated his request to the Warden February 15, 2021, and the Warden's office received the request on March 3, 2021. ECF No. 35-1 (Ex. 3). Oliver then filed his motion on March 22, 2021, 19 days later. Motion at 1. Although Oliver filed his motion sooner than "the lapse of 30 days" from the date of his request as required by Section 3582(c)(1)(A), the Government waives reliance on Oliver's failure to exhaust his administrative remedies. Opp. at 9 n.5. The Court therefore turns to the merits of Oliver's motion.

### II. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

. . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

4

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain serious medical conditions, advanced age, certain family circumstances, or some "other" reasons "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.  While the Court's decision is guided by this policy statement, a number of district courts have found that the amended Section 3583(c)(1)(A)(i) grants courts independent discretion to determine whether a defendant has provided extraordinary and compelling reasons for a reduction of their sentence. *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020).

     In support of his argument that he presents extraordinary and compelling reasons for release, Oliver asserts that he has been "exposed to illegal, inhumane conditions" such as long periods "locked in a cell, sometimes without access to a shower, clean clothes, and fresh air." Motion at 2–3.  Oliver argues that he spent "one year in a solitary confinement" where he was unable to "communicate with family, exercise, or even breath[e] fresh air." *Id.* at 5.  He alleges that such conditions had "negative psychological [e]ffects" on him and brought about depression and anxiety. *Id.* at 3, 5.  The Government states that such conditions were part of measures created by the Bureau of Prisons ("BOP") to contain the spread of COVID-19 and protect the health of inmates. Opp. at 3.  The modified operation required "all inmates in every BOP institution to be secured in their assigned cells" and limited the movement of inmates and group gathering while facilitating reasonable access to showers and laundry. *Id.*

5

18-cr-03390-GPC-1

Although Oliver states that he suffers from depression and anxiety, he fails to demonstrate "a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility." Furthermore, the conditions of confinement to which Oliver objects were equally applied to all inmates to contain the spread of COVID-19 at FCI Victorville, and thus do not on their own constitute an extraordinary and compelling reason to justify release.

Second, Oliver alleges that he was given COVID-19 by a staff member. Motion at 5. He states that staff members have refused to wear masks and follow CDC guidelines. *Id.* Oliver alleges that as a result he contracted and tested positive for COVID-19 in December 2020. *Id.* at 3; Ex. 2 at 2. The Government argues that Oliver has failed to present evidence to support his accusation that staff members purposefully gave him COVID-19. Opp. at 19 n.11. The Government states that "all staff have been given face masks and have been encouraged to wear [them] in public areas when social distancing is not possible." *Id*. Oliver also alleges that he "suffered physically and mentally" from COVID-19 and now "faces a substantial risk of future complications to his hearts, lungs, and overall health." Motion at 5. The Government opposes this claim because medical records show that Oliver had "consistently denied the presence of any symptoms from the virus." Opp. at 19.

Oliver does not provide evidence that the staff members deliberately infected him with COVID-19 except for the allegation that masks were not properly worn. The CDC states that the virus "spreads when an infected person breathes out droplets and very small particles that contain the virus." Ctrs. For Disease Control and Prevention ("CDC"), *Ways COVID-19 Spreads* (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. The Court recognizes that staff members not wearing masks may have contributed to the spread of COVID-19 and finds the allegation to be cause for concern,

6

but Oliver fails to demonstrate that the past failure to wear masks constitutes a reason for his release now. Additionally, Oliver fails to state any underlying medical issues that may increase his risk for severe illness from the virus were he to be reinfected. According to the Presentence Investigation Report, Oliver was healthy prior to sentencing and had no history of serious health problems. PSR ¶ 45. Oliver also "disavowed having any mental and emotional health concerns." *Id.* ¶ 47. According to his medical records, Oliver also denied COVID-19 symptoms such as "cough, [shortness of breath], muscle pain, fatigue, sore throat . . . and/or chills." Ex. 2 at 5–6. Further, while reinfection has been reported, it appears to be rare. *See* CDC, *Reinfection* (Oct. 27, 2020) https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. Although the Court does not rule out the possibility that Oliver could be reinfected with COVID-19 while at FCI Victorville, it finds that the apparent rarity of reinfection coupled with Oliver's asymptomatic case and failure to identify any residual effects or underlying medical conditions weighs against his release. Accordingly, Oliver's past infection with COVID-19 fails to constitute an extraordinary and compelling reason to justify release.

Lastly, the Government states that Oliver "rejected the opportunity to be immunized against COVID-19." Ex. 2 at 18; Opp. at 20. This Court has recognized that vaccination significantly mitigates the risk of contracting COVID-19. *See, e.g., United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Rocha*, No. 18-CR-04180-BAS-1, 2021 WL 134150, at *3 (S.D. Cal. Jan. 14, 2021) (stating an "extraordinary and compelling" circumstance does not exist given that defendant "is likely to get a vaccine soon"). A recent study showed that Pfizer-BioNtech and Moderna vaccines reduced the risk of severe illness of COVID-19 by 94% for those who were vaccinated. CDC, *Largest CDC COVID-19 Vaccine Effectiveness Study in Health Workers Shows mRNA Vaccines 94% Effective* (May 14, 2021), https://www.cdc.gov/media/releases/2021/p0514-covid-19-vaccine-

effectiveness.html. Other district courts have held that a defendant cannot expect compassionate release when they decline vaccination and the opportunity to reduce their risk to COVID-19 exposure. *See, e.g.*, *United States v. Lohmeier*, No. 1:12-CR-1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("[Defendant] cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. McBride*, No. 5:19-CR-00007-KDB-DCK-1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) ("Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release.") Accordingly, Oliver's refusal to be vaccinated weighs heavily against his claim that there is an extraordinary and compelling reason to justify release.

Because Oliver has failed to demonstrate the threshold requirement of extraordinary and compelling reasons justifying his release, the Court does not reach the sentencing factors set forth in Section 3553(a).

### III. Eighth Amendment Claim

In his motion, Oliver also alleges a violation of his Eighth Amendment right against cruel and unusual punishment. Motion at 4. Oliver contends that "illegal and inhumane conditions" were inflicted upon him by the government. *Id.* These conditions included "long periods locked in a cell, sometimes without access to a shower, clean clothes, and fresh air" and "solitary confinement . . . without being able to communicate with family [and] exercise." *Id.* at 4–5. Oliver alleges the government inflicted such conditions knowing the negative psychological effects the conditions may have. *Id.*

To allege an Eighth Amendment violation for unsafe prison conditions, the defendant must demonstrate that the prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "Eighth Amendment requires [jails and prisons] to take adequate steps to curb the spread of disease within the prison system." *United States v.*

*Perez*, No. 18CR4145-H, 2020 WL 4732056, at *5 (S.D. Cal. Aug. 14, 2020) (citing *Coleman v. Newsom*, No. 01-CV-01351-JST, 2020 WL 1675775, at *5 (E.D. Cal. Apr. 4, 2020)). But while Oliver purports to raise a claim under the Eighth Amendment in his motion, "an Eighth Amendment claim 'relating to the manner and conditions of confinement—are not properly brought in a motion for compassionate release . . . and this Court does not have jurisdiction to consider them.'" *Perez*, 2020 WL 4732056, at *5 (quoting *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 197717, at *4 (D. Alaska Apr. 24, 2020)). Accordingly, the Court finds it cannot consider Oliver's Eighth Amendment claim.

## Conclusion

For the reasons set forth above, the Motion for Compassionate Release is **DENIED.**

**IT IS SO ORDERED.**

Dated: June 28, 2021

Hon. Gonzalo P. Curiel
United States District Judge